UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL OUELLETTE,

        Plaintiff,                   CIVIL ACTION NO. 15-cv-11604

    v.                               DISTRICT JUDGE ARTHUR J. TARNOW

VILLAGE OF BEVERLY HILLS      MAGISTRATE JUDGE MONA K. MAJZOUB
PUBLIC SAFETY DEPARTMENT
and LIEUTENANT MICHAEL VARGAS,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Michael Ouellette filed this *pro se* civil rights action on May 4, 2015, pursuant to 42 U.S.C. § 1983, alleging that Defendants Village of Beverly Hills Department of Public Safety[1] and Lieutenant Michael Vargas violated his Fourth, Sixth, and Eighth Amendment rights. (Docket no. 1.) This matter is before the Court on Defendants' Motion for Summary Judgment. (Docket no. 29.) Despite receiving an extension of time (docket no. 34), Plaintiff did not respond to Defendants' Motion, and the time for response has passed. Seemingly in lieu of a response, Plaintiff filed a Motion for Voluntary Dismissal (docket no. 35), to which Defendants responded (docket no. 36). This action has been referred to the undersigned for all pretrial purposes. (Docket no. 13.) The Court dispenses with oral argument on the Motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] Plaintiff names the Village of Beverly Hills Public Safety Department in the Complaint; however, this defendant refers to itself as the Village of Beverly Hills Department of Public Safety in the instant Motion. (*See* docket no. 29.) Accordingly, the Court will adopt and refer to Defendant's version of its proper name throughout this Report and Recommendation.

**I.      RECOMMENDATION**

For the reasons that follow, it is recommended that Defendants' Motion for Summary Judgment (docket no. 29) be **GRANTED** insofar as Defendants seek dismissal of Plaintiff's claims against them and **DENIED** insofar as Defendants seek the costs and attorney fees that they incurred in defending this action.  It is also recommended that Plaintiff's Motion for Voluntary Dismissal (docket no. 35) be **DENIED** and that this matter be dismissed in its entirety with prejudice.

**II.     REPORT**

   **A.     Plaintiff's Allegations**

Plaintiff is currently incarcerated at the Marquette Branch Prison in Marquette, Michigan as a result of a conviction on two charges of Aggravated Stalking related to the arrests described in the instant Complaint.  (Docket no. 29 at 12; *see* Mich. Dep't of Corr. Offender Tracking Info. Sys. (OTIS).[2])  In the Complaint, Plaintiff alleges that he was arrested and detained in a holding cell at the Village of Beverly Hills Department of Public Safety (BHDPS) from November 23, 2013, to November 25, 2013.  (Docket no. 1 ¶ 9.)  He alleges that throughout his detention, he was denied food and the medication that he takes for his psychological condition.  (*Id*. ¶ 10.)  Plaintiff claims that the deprivation described above constituted cruel and unusual punishment in violation of his Eighth Amendment rights.  (*Id*.)  According to Plaintiff, when he asked Defendant Vargas for something to eat, Defendant Vargas mocked him and made fun of him by saying, "You're too fat as it is, you don't need to eat."  (*Id*. ¶ 11.)  Plaintiff claims that on November 24, 2013, he called his mother and his attorney, Jean Hansen, and told them that he had not been given his medication or anything to eat and informed them of Defendant Vargas's

---

[2] The Court is permitted to take judicial notice of the information contained on OTIS.  *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821 n.3 (E.D. Mich. 2004).

response to his request for food. (*Id*. ¶ 12.) Plaintiff states that he did not eat until late in the evening on November 24, 2013, when Ms. Hansen brought him a sandwich and French fries. (*Id*. ¶ 13.) Plaintiff also asserts that his other attorney, Joyce Rosenthal, contacted the BHDPS on November 25, 2013 to inquire into Plaintiff's status, but Defendant Vargas hung up on her. (*Id*. ¶ 14.)

Plaintiff alleges that he was arrested again on Friday, November 29, 2013, and was detained in a holding cell at the BHDPS for the entire weekend. (*Id*. ¶ 15.) According to Plaintiff, he was fed only one granola bar throughout the detention, was deprived of his medication, and was again mocked by Defendant Vargas for being fat. (*Id*. ¶ 16.) Plaintiff avers that he was arraigned on November 30, 2013, for which his attorney, Jean Hansen, was present and voiced concern over Plaintiff not receiving his medication. (*Id*. ¶ 17.) Plaintiff alleges that in response to Ms. Hansen's concerns, Defendant Vargas stated, that Plaintiff would be transported to the county jail shortly, which has a medical facility. (*Id*.; docket no. 29-8 at 15.) Plaintiff also alleges that he was not transported to the county jail for more than 48 hours and reiterates that he was deprived of his medication and given only one granola bar during the entire detention. (*Id*.) Plaintiff further alleges that his attorney arrived at the BHDPS before the arraignment and asked to meet with Plaintiff, but her request was denied by Defendant Vargas, who allegedly said, "We have nowhere for you to meet him, you'll have to speak with him through the cell door slot, and watch what you talk about as the whole area is being recorded, and I'll be listening to it later." (*Id*. ¶ 18.) Plaintiff claims that Defendant Vargas's behavior in this regard infringed upon his Sixth Amendment right to counsel. (*Id*.)

Plaintiff also alleges that the Village of Beverly Hills Department of Public Safety is not equipped to house detainees for any extended period of time and that detainees are instead

3

housed in the neighboring City of Birmingham. (*Id*. ¶ 20.) Plaintiff alleges that such was the practice and procedure in effect during both of his detentions, during which he was subjected to cruel and unusual punishment and deprived of his Sixth Amendment rights. (*Id*.)

Plaintiff makes several other allegations in the Complaint, most of which are seemingly unrelated to the two periods of detention discussed above. For example, Plaintiff alleges that in February of 2014, he arrived at the BHDPS with an envelope from his attorney that contained privileged information. (*Id*. ¶ 19.) Plaintiff asserts that the envelope was taken from him and was not returned until October of 2014. (*Id*.) Plaintiff also alleges that in August of 2014, his attorney, Ms. Rosenthol, attempted to contact the BHDPS to pick up papers requested through the Freedom of Information Act (FOIA), but she was hung up on. (*Id*. ¶ 21.) According to Plaintiff, when Ms. Rosenthol went to the BHDPS in person to pick up the requested paperwork, Defendant Vargas threw the paperwork at her. (*Id*.) Plaintiff claims that he discovered upon reading the contents of that paperwork that he had been left completely alone while he was detained in the holding cell at the BHDPS while the officers went on a fire run, which he claims subjected him to a potential medical and/or fire emergency. (*Id*. ¶ 22.) Lastly, Plaintiff alleges that in July of 2014, he learned that a GPS tracking device was attached to one of his work vehicles. (*Id*. ¶ 23.) Plaintiff claims that he then hired a private investigator, who determined through the longitudinal and latitudinal coordinates that the device was activated at the BHDPS. (*Id*.) Plaintiff claims that the use of the device violated his Fourth Amendment rights because neither he nor his attorney was aware of any warrant authorizing the device. (*Id*.)

**B.    Governing Law**

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 29.) Summary judgment is appropriate where the moving party shows that there is

4

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.** **Analysis**

*1.* *Defendants' Motion for Summary Judgment [29]*

a. <u>Plaintiff's Claims against Defendant Village of Beverly Hills Department of Public Safety</u>

As an initial matter, a municipal police department is not a separate municipality from the city it serves; thus, any claims filed against a city police department are filed "against the city itself, because the city is the real party in interest." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994). Accordingly, the Village of Beverly Hills Department of Public Safety is not a proper defendant in this matter and should be dismissed. *See McKissick-Johnson v. Detroit Police Dept.*, No. 13-13309, 2013 WL 5177975, at *1 (E.D. Mich. Sept. 12, 2013); *Zueski v. Michigan State Police*, No. 07-10245, 2008 WL 2357709, at *1 (E.D. Mich. June 6, 2008).

Even if the court were to construe the Complaint as though it had been filed against the Village of Beverly Hills or permit Plaintiff to amend the Complaint to add the Village of Beverly Hills as a defendant, Plaintiff's claims would not survive the instant Motion for Summary Judgment. To state a claim against a municipality under § 1983, a plaintiff must allege that his injury was caused by an unconstitutional policy or custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] 'custom' is a legal institution that is permanent and established, but is not authorized by written law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Monell*, 436 U.S. at 691). A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn. Area Local. Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

Here, Plaintiff alleges that it was the practice and procedure of the Village of Beverly Hills Department of Public Safety to house detainees in the City of Birmingham because the BHDPS was not equipped to house detainees for any extended period of time. (Docket no. 1 ¶ 20.) Plaintiff alleges that this practice was in effect during both of his detentions, during which he was subjected to cruel and unusual punishment and deprived of his Sixth Amendment rights. (*Id.*) Plaintiff does not provide any significant probative evidence to show that the BHDPS maintained such a custom, policy, or practice, or that policymaking officials knew of and acquiesced in the practice. Even if the BHDPS did maintain a custom or policy of housing inmates in the City of Birmingham, such a policy is not inherently unconstitutional. Moreover, Plaintiff cannot show how the policy affected his constitutional rights, because, as Plaintiff alleges, each time he was detained, it was in a holding cell at the BHDPS, not in the City of Birmingham. (*See id.* ¶¶ 9, 15.) As Defendants point out, there must be sufficient evidence to show that the policy caused the constitutional deprivation. (Docket no. 29 at 29 (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).) Plaintiff has not provided any such evidence here.

At most, Plaintiff has pleaded a causal connection between the alleged violations of his Sixth and Eighth Amendment rights and his conclusory allegation that the BHDPS was ill-equipped to house detainees. But the alleged fact that the BHDPS was not properly equipped to house detainees does not necessarily constitute a custom or policy, and Plaintiff has failed to provide significant probative evidence to show that it was indeed an established custom or policy of the Village of Beverly Hills. Therefore, the municipal defendant, whether it is the Village of Beverly Hills Department of Public Safety or the Village of Beverly Hills itself, is entitled to summary judgment under *Monell* and its progeny.

b. <u>Plaintiff's Claims against Lieutenant Michael Vargas</u>

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendant Vargas was a person acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether he deprived Plaintiff of a constitutional right.

Plaintiff alleges that Defendant Vargas violated the Eighth Amendment's prohibition against cruel and unusual punishment by depriving him of food and medication during his detention at the BHDPS from November 23, 2013 to November 25, 2013. (Docket no. 1 ¶¶ 9-13.) Defendant correctly argues that Plaintiff cannot assert a claim under the Eighth Amendment because a pretrial detainee's rights are governed by the Fourteenth Amendment. (Docket no. 29 at 15 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).) Defendant further argues for the dismissal of Plaintiff's claims on this basis. (*Id.*) However, "[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (citations omitted). Moreover, the same deliberate indifference standard governs the claims of convicted prisoners under the Eighth Amendment and of pretrial detainees under the Fourteenth Amendment. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). Accordingly, the Court declines to dismiss Plaintiff's Eighth Amendment claims on the grounds set forth by Defendants; instead, given the liberal construction afforded to a *pro se* plaintiff's pleadings, the Court will consider Plaintiff's argument on the merits as if he had brought his claims under the Fourteenth

Amendment. Nevertheless, for the sake of simplicity, the Court will refer to Eighth Amendment jurisprudence in the ensuing discussion.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Where a prisoner asserts that his claims are based on conditions of confinement, the prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. That is, the plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant acted with "'deliberate indifference' to [his] health or safety." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying the deliberate-indifference standard to conditions of confinement claims)). "Fundamentally, the concept underlying the Eighth Amendment is nothing less than the dignity of humankind." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 564, 568 (6th Cir. 2013) (internal quotations, omissions, and modifications omitted).

Here, Plaintiff asserts that he was given no food or medication for his psychological condition during his detention at the BHDPS from November 23, 2013 to November 25, 2013. (Docket no. 1 ¶ 10.) He claims that he was not fed until late in the evening on November 24, 2013, when his attorney brought him a sandwich and French fries. (*Id.* ¶ 13.) Plaintiff also

9

alleges that when he asked Defendant Vargas for something to eat, Defendant Vargas made fun of Plaintiff by stating, "You're too fat as it is, you don't need to eat." (*Id.* ¶ 11.)

In response, Defendant Vargas points out that Plaintiff does not specifically allege that Defendant Vargas is the one who denied Plaintiff food or medication, only that Defendant Vargas mocked Plaintiff for being overweight. (Docket no. 29 at 14 n.6.) Additionally, Defendant Vargas submitted an affidavit with the instant Motion in which he explains that it is standard procedure at the BHDPS to feed detainees at approximately 7:30 to 8:00 a.m., 11:00 a.m. to 12:00 p.m., and 5:00 to 6:00 p.m. each day. (Docket no. 29-11 ¶ 13.) Defendant Vargas continues that given these feeding times, it is the responsibility of the day-shift officers to feed the detainees, as the night-shift officers work from 7:00 p.m. to 7:00 a.m., outside of the scheduled feeding times. (*Id.* ¶ 14.) According to Defendant Vargas and to the BHDPS shift schedule dated November 2013 to December 2013, Defendant Vargas worked the night shift on November 23, 2013 and November 24, 2013, so he was not charged with feeding Plaintiff. (*Id.* ¶¶ 4-5; docket no. 29-10.) Defendant Vargas also attests that Plaintiff did not ask Defendant Vargas for food during his detention, but if he had, Defendant Vargas would have given him a granola bar or a frozen burrito. (Docket no. 29-11 ¶ 15.) Defendant Vargas further attests that Plaintiff never asked Defendant Vargas for any medication during his detention, but if he had, Defendant Vargas would have looked to see whether someone had brought in medication for Plaintiff and, if so, he would have administered it to Plaintiff in accordance with the prescription. (*Id.* ¶ 16.) Also, Defendant Vargas categorically denies calling Plaintiff "fat" or making any other disparaging remarks to him (*Id.* ¶ 22), and correctly argues that even if he had made such remarks, they would not constitute an Eighth Amendment violation (docket no. 29 at 17 (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)).

Defendant Vargas also argues that Plaintiff's own admissions belie his allegations regarding a deprivation of food and medication. (*Id*. at 14.) Defendant Vargas bases this argument on statements that Plaintiff made in a November 29, 2013 interview conducted by BHDPS officers, the video of which was submitted as an exhibit to Defendants' Motion for Summary Judgment. (Docket no. 29-9.) Specifically, during the interview, Plaintiff explained that he received a granola bar every eight hours during his November 23, 2013 to November 25, 2013 detention. (Docket no. 29-9, Interview 1 at 18:17:59-18:18:10). When the officers asked Plaintiff whether he also received a frozen burrito, Plaintiff confirmed that it was granola bars. (*Id*.) Plaintiff also indicated in the interview that his attorney brought his bipolar disorder medication to him at the BHDPS at 5:00 p.m. on the second day of his detention. (*Id*. at 18:19:01-18:19:06.)

In light of the objective video evidence submitted by Defendants, the Court finds it unnecessary to undergo an Eighth Amendment analysis of Plaintiff's claims, because Plaintiff's video-recorded statements directly contradict Plaintiff's allegation that he was given no food or medication throughout his November 23, 2013 to November 25, 2013 detention. Stated differently, Plaintiff's own admissions make clear that the alleged unconstitutional conduct did not occur. Notably, Plaintiff has failed to respond to Defendants' Motion to provide any explanation for the statements that he made in the November 29, 2013 interview, and he has not come forward with significant probative evidence to show that a genuine issue exists for trial in this regard. Defendant Vargas should therefore be granted summary judgment on Plaintiff's claim that Defendant Vargas violated the Eighth Amendment's prohibition against cruel and unusual punishment by depriving Plaintiff of food and medication during his detention at the BHDPS from November 23, 2013 to November 25, 2013.

11

With regard to Plaintiff's claims arising from his detention at the BHDPS from November 29, 2013 to November 30, 2013, Defendant Vargas attests in both the instant Motion and his sworn affidavit that he was not on duty on those days and thus cannot possibly be liable to Plaintiff for those claims. (Docket no. 29 at 11, 20; docket no. 29-11 ¶ 7.) To support this assertion, Defendant Vargas cites to the BHDPS's shift schedule for portions of November and December 2013, which unequivocally shows that Defendant Vargas was on leave on November 29, 2013 and November 30, 2013. (Docket no. 29-10.) Again, Plaintiff has failed to provide any evidence to the contrary. If Defendant Vargas was not working on those dates, he could not have committed the constitutional violations that allegedly took place on those dates. Accordingly, Plaintiff's claims against Defendant Vargas arising from his detention from November 29, 2013 to November 30, 2013, fail as a matter of law, and Defendant Vargas is entitled to summary judgment in this regard.

As previously noted, Plaintiff makes other allegations against Defendant Vargas in the Complaint unrelated to the conditions of his detention. For example, Plaintiff alleges that Defendant Vargas hung up on his attorney, Joyce Rosenthal, when she called to inquire into Plaintiff's status on November 25, 2013, and threw FOIA-requested paperwork in Ms. Rosenthal's face when she appeared in person at the BHDPS to pick up that paperwork sometime in August of 2014. (Docket no. 1 ¶¶ 14, 21.) To the extent that Plaintiff purports to claim that Defendant Vargas's November 25, 2013 conduct against Ms. Rosenthal constitutes a denial of counsel under the Sixth Amendment, Plaintiff's claim fails, as the record shows that Plaintiff was represented by attorney Jean Hansen during his November 23, 2013 to November 25, 2013 detention at the BHDPS. Specifically, Plaintiff alleges that Ms. Hansen visited him at the BHDPS on November 24, 2013 (*Id.* ¶ 13), and court records show that Ms. Hansen

represented Plaintiff at the November 25, 2013 arraignment (docket no. 29-8 at 10). Regarding Plaintiff's allegation that Defendant Vargas threw paperwork at Ms. Rosenthal, such an allegation does not rise to the level of a constitutional violation. At most, Plaintiff pleads a state-law claim of assault against Defendant Vargas on behalf of Ms. Rosenthal, which Plaintiff does not have standing to pursue. Plaintiff's purported claims against Defendant Vargas fail as a matter of law.[3]

###### c. Plaintiff's Other Allegations

Plaintiff alleges that in February of 2014, he arrived at the BHDPS with an envelope from his attorney containing privileged information, which envelope was taken from him and was not returned until October of 2014. (Docket no. 1 ¶ 19.) Plaintiff also alleges that in August of 2014, his attorney, Ms. Rosenthal contacted the BHDPS to pick up FOIA-requested paperwork but was hung up on. (*Id.* ¶ 21.) Plaintiff claims that through that paperwork, he learned that he was left completely alone in his holding cell at the BHDPS while the officers went on a fire run, thus subjecting Plaintiff to a medical or fire emergency. (*Id.* ¶ 22.) Finally, Plaintiff alleges that in July of 2014, he learned that a GPS tracking device had been attached to one of his work vehicles. (*Id.* ¶ 23.) Plaintiff continues that he hired a private investigator to investigate the device, and the investigator told Plaintiff that the device appeared to be activated at the BHDPS. (*Id.*) Plaintiff asserts that neither he nor his attorney is aware of any warrant authorizing the placement of such a device, and therefore the device violated Plaintiff's Fourth Amendment rights.

Of all the allegations listed above, the allegation regarding the GPS tracking device is the only one that potentially has any constitutional connotations. Defendants argue that this claim is

---

[3] Plaintiff has failed to show that Defendant Vargas acted unconstitutionally, and where there is no constitutional violation, "the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007).

unfounded and unsupported by any evidence. (Docket no. 29 at 24-25.) Additionally, Defendant Vargas asserts that he did not arrange for the placement of a GPS tracking device on Plaintiff's vehicle and that he has not heard from anyone at the BHDPS that such a device was planted. (*Id.* at 25.) Even drawing all justifiable inferences in the light most favorable to Plaintiff, Plaintiff has failed to specify which, if either, of the named Defendants committed the alleged Fourth Amendment violation. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (To state a claim for monetary damages under section 1983, a prisoner plaintiff must allege some specific personal wrongdoing on the part of each individual defendant.) Moreover, Plaintiff has failed to submit any evidence, such as the private investigator's report or an affidavit from the private investigator, regarding the location of the device, the activation of the device, or the nature of the device to support his claim. Defendants' Motion for Summary Judgment should therefore be granted with regard to Plaintiff's Fourth Amendment claim and in its entirety.

### 2. *Plaintiff's Motion for Voluntary Dismissal [35]*

Plaintiff filed a Motion for Voluntary Dismissal on October 31, 2016. (Docket no. 35.) In his Motion, Plaintiff acknowledges that Defendants filed their Motion for Summary Judgment in August of 2016 and that the Court extended the time for Plaintiff's response to their motion until November 1, 2016. (*Id.* ¶¶ 2-3.) Plaintiff claims that he has limited resources and contacts and has been unable to obtain the forms and documents necessary to adequately respond to Defendants' Motion, namely, affidavits from his attorneys and other witnesses. (*Id.* ¶ 4.) Plaintiff therefore seeks to dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) because he does not believe that he could satisfy the court within the time allotted for response to Defendants' Motion. (*Id.*) Defendants oppose Plaintiff's Motion on the basis that dismissal without prejudice would be patently unfair, as this case has proceeded

14

through discovery to the dispositive motion phase, and significant effort and expense have been expended in defending this action to date. (Docket no. 36.)

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The decision whether to dismiss a complaint under Rule 41(a)(2) lies within the sound discretion of the court. *Banque de Depots v. Nat'l Bank of Detroit,* 491 F.2d 753, 757 (6th Cir. 1974). The Sixth Circuit has said that under Rule 41(a)(2), the question is whether the defendant would suffer "plain legal prejudice" as a result of the dismissal without prejudice. *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994). In determining such prejudice, the court should consider "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Bridgeport Music, Inc. v. Universal-MCA Music Publ'g., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (citation omitted).

Here, Plaintiff initiated this action on May 4, 2015, and on August 14, 2015, the Court entered a Scheduling Order that set the discovery cutoff deadline for July 1, 2016. (Docket no. 1; docket no. 15.) Under these facts, Plaintiff had over a year, which is more than ample time, to conduct discovery in this matter and to gather the information and documents that he needed to prosecute his case to completion, whether that be at the dispositive motion stage or through a trial on the merits. Plaintiff seemingly claims that his limited resources contacts thwarted his discovery efforts. But the record indicates that Plaintiff actively engaged in discovery with Defendants prior to the discovery deadline. (*See* docket nos. 16, 18-23.) Moreover, Plaintiff's *pro se* status does not absolve him from meeting the Court's discovery deadline, of which

15

Plaintiff was well aware. *See Bunting v. Hansen*, No. 05-10116-BC, 2007 WL 1582236, at *2 (E.D. Mich. May 31, 2007) (citing *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991)). Furthermore, Defendants have already filed a well-founded motion for summary judgment in this matter, and they purport to have incurred significant expenses and attorney's fees in defending this action. (Docket no. 29; docket no. 36 at 9.) The immediate discussion, along with Plaintiff's failure to provide a good reason for the need to take a dismissal and the findings regarding Defendants' Motion for Summary Judgment, *supra*, demonstrate that Defendants would be prejudiced if Plaintiff's Motion were granted. Accordingly, Plaintiff's Motion for Voluntary Dismissal of this action without prejudice should be denied.

### D.     Conclusion

For the reasons stated herein, it is recommended that the court **GRANT** Defendants' Motion for Summary Judgment (docket no. 29) insofar as Defendants seek dismissal of Plaintiff's claims against them and **DENIED** insofar as Defendants seek the costs and attorney fees that they incurred in defending this action. It is also recommended that the court **DENY** Plaintiff's Motion for Voluntary Dismissal (docket no. 35) and dismiss this matter in its entirety with prejudice.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: January 20, 2017         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: January 20, 2017         s/ Lisa C. Bartlett
                                Case Manager

17