UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

M<span>ICHAEL</span> O<span>UELLETTE</span>,

       Plaintiff,

v.

V<span>ILLAGE OF</span> B<span>EVERLY</span> H<span>ILLS ET AL</span>,

       Defendant.

_____/

Case No. 15-11604

S<span>ENIOR</span> U.S. D<span>ISTRICT</span> J<span>UDGE</span>
A<span>RTHUR</span> J. T<span>ARNOW</span>

U.S. M<span>AGISTRATE</span> J<span>UDGE</span>
M<span>ONA</span> K. M<span>AJZOUB</span>

**O<span>RDER</span> A<span>DOPTING</span> R<span>EPORT AND</span> R<span>ECOMMENDATION</span> [37]; D<span>ENYING</span> P<span>LAINTIFF'S</span> M<span>OTION FOR</span> V<span>OLUNTARY</span> D<span>ISMISSAL</span> [35]; G<span>RANTING IN PART</span> D<span>EFENDANTS'</span> M<span>OTION FOR</span> S<span>UMMARY</span> J<span>UDGMENT</span> [29]; D<span>ENYING AS</span> M<span>OOT</span> D<span>EFENDANT'S</span> E<span>X</span> P<span>ARTE</span> M<span>OTION TO</span> F<span>ILE</span> E<span>XHIBIT IN</span> T<span>RADITIONAL</span> M<span>ANNER</span> [39]**

Plaintiff filed a *pro se* complaint on May 4, 2015, pursuant to 42 U.S.C. §1983, alleging that Defendants Village of Beverly Hills Department of Public Safety ("BHDPS") and Lieutenant Michael Vargas violated his Fourth, Sixth and Eighth Amendment rights [1]. Defendants filed a Motion for Summary Judgment on August 1, 2016 [29]. Plaintiff filed a Motion for Voluntary Dismissal [35] on October 31, 2016, requesting that the case be dismissed without prejudice because he was unable to answer the motion by the Court's deadline due to a lack of resources to obtain necessary affidavits to defend his case. Defendants responded on November 9, 2016 [36]. The Magistrate Judge issued a report and recommendation on January 20, 2017 [37], recommending that the Court grant Defendants' Motion for Summary Judgment in part, dismissing all of Plaintiff's

claims with prejudice and denying Defendants' request for costs and attorney fees, and deny Plaintiff's Motion for Voluntary Dismissal. Plaintiff filed objections to this Report and Recommendation on February 17, 2017 [38]. Defendant filed a response and an Ex Parte Motion to File Exhibit in Traditional Manner [39]. For the reasons stated below, Defendant's Ex Parte Motion to File Exhibit in Traditional Manner [39] is **DENIED as moot.** The Court **ADOPTS** the Report and Recommendation [37]. Plaintiff's Motion for Voluntary Dismissal [35] is **DENIED.** Defendants' Motion for Summary Judgment [29] is **GRANTED in part**, granted in dismissing all of Plaintiff's claims against named Defendants with prejudice and denied as to Defendants' request for attorney fees and costs.

## STATEMENT OF FACTS

The Magistrate Judge summarized the factual background of the complaint as follows:

> Plaintiff is currently incarcerated at the Marquette Branch Prison in Marquette, Michigan as a result of a conviction on two charges of Aggravated Stalking related to the arrests described in the instant Complaint. (Docket no. 29 at 12; see Mich. Dep't of Corr. Offender Tracking Info. Sys. (OTIS).2) In the Complaint, Plaintiff alleges that he was arrested and detained in a holding cell at the Village of Beverly Hills Department of Public Safety (BHDPS) from November 23, 2013, to November 25, 2013. (Docket no. 1 ¶ 9.) He alleges that throughout his detention, he was denied food and the medication that he takes for his psychological condition. (Id. ¶ 10.) Plaintiff claims that the deprivation described above constituted cruel and unusual punishment in violation of his Eighth Amendment rights. (Id.) According to Plaintiff, when he asked Defendant Vargas for something to eat, Defendant Vargas mocked him and made fun of him

by saying, "You're too fat as it is, you don't need to eat." (Id. ¶ 11.) Plaintiff claims that on November 24, 2013, he called his mother and his attorney, Jean Hansen, and told them that he had not been given his medication or anything to eat and informed them of Defendant Vargas's response to his request for food. (Id. ¶ 12.) Plaintiff states that he did not eat until late in the evening on November 24, 2013, when Ms. Hansen brought him a sandwich and French fries. (Id. ¶ 13.) Plaintiff also asserts that his other attorney, Joyce Rosenthal, contacted the BHDPS on November 25, 2013 to inquire into Plaintiff's status, but Defendant Vargas hung up on her. (Id. ¶ 14.)

Plaintiff alleges that he was arrested again on Friday, November 29, 2013, and was detained in a holding cell at the BHDPS for the entire weekend. (Id. ¶ 15.) According to Plaintiff, he was fed only one granola bar throughout the detention, was deprived of his medication, and was again mocked by Defendant Vargas for being fat. (Id. ¶ 16.) Plaintiff avers that he was arraigned on November 30, 2013, for which his attorney, Jean Hansen, was present and voiced concern over Plaintiff not receiving his medication. (Id. ¶ 17.) Plaintiff alleges that in response to Ms. Hansen's concerns, Defendant Vargas stated, that Plaintiff would be transported to the county jail shortly, which has a medical facility. (Id.; docket no. 29-8 at 15.)

Plaintiff also alleges that he was not transported to the county jail for more than 48 hours and reiterates that he was deprived of his medication and given only one granola bar during the entire detention. (Id.) Plaintiff further alleges that his attorney arrived at the BHDPS before the arraignment and asked to meet with Plaintiff, but her request was denied by Defendant Vargas, who allegedly said, "We have nowhere for you to meet him, you'll have to speak with him through the cell door slot, and watch what you talk about as the whole area is being recorded, and I'll be listening to it later." (Id. ¶ 18.) Plaintiff claims that Defendant Vargas's behavior in this regard infringed upon his Sixth Amendment right to counsel. (Id.)

Plaintiff also alleges that the Village of Beverly Hills Department of Public Safety is not equipped to house detainees for any extended period of time and that detainees are instead housed in the neighboring City of Birmingham. (Id. ¶ 20.) Plaintiff alleges that such

was the practice and procedure in effect during both of his detentions, during which he was subjected to cruel and unusual punishment and deprived of his Sixth Amendment rights. (Id.)

Plaintiff makes several other allegations in the Complaint, most of which are seemingly unrelated to the two periods of detention discussed above. For example, Plaintiff alleges that in February of 2014, he arrived at the BHDPS with an envelope from his attorney that contained privileged information. (Id. ¶ 19.) Plaintiff asserts that the envelope was taken from him and was not returned until October of 2014. (Id.) Plaintiff also alleges that in August of 2014, his attorney, Ms. Rosenthol, attempted to contact the BHDPS to pick up papers requested through the Freedom of Information Act (FOIA), but she was hung up on. (Id. ¶ 21.) According to Plaintiff, when Ms. Rosenthol went to the BHDPS in person to pick up the requested paperwork, Defendant Vargas threw the paperwork at her. (Id.) Plaintiff claims that he discovered upon reading the contents of that paperwork that he had been left completely alone while he was detained in the holding cell at the BHDPS while the officers went on a fire run, which he claims subjected him to a potential medical and/or fire emergency. (Id. ¶ 22.) Lastly, Plaintiff alleges that in July of 2014, he learned that a GPS tracking device was attached to one of his work vehicles. (Id. ¶ 23.) Plaintiff claims that he then hired a private investigator, who determined through the longitudinal and latitudinal coordinates that the device was activated at the BHDPS. (Id.) Plaintiff claims that the use of the device violated his Fourth Amendment rights because neither he nor his attorney was aware of any warrant authorizing the device. (Id.)

[37 at 2-4].

## STANDARD OF REVIEW

This Court reviews objections to an R&R on a dispositive motion *de novo*. *See* 28 U.S.C. § 636(b)(1)(c). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

1. **DEFENDANT'S EX PARTE MOTION TO FILE EXHIBIT IN TRADITIONAL MANNER [39]**

After performing a de novo review of the Magistrate's Report and Recommendation and the record in the case, the Court determines that, for the reasons stated below, the Objections filed have no merit and the Court rules below without referencing the response. Therefore, the Court denies as moot Defendant's Ex Parte Motion to File Exhibit in Traditional Manner [39].

2. **REPORT AND RECOMMENDATION [38]**

Plaintiff raises four objections to the Report and Recommendation [38]: (1) Plaintiff admits error in naming Defendant Vargas as being present for his

arraignment, and upon review of the Motion for Summary Judgment record, Plaintiff learned that a Lieutenant was present during the arraignment. Plaintiff asserts that due to his *pro se* status, he mistakenly filed a Motion for Voluntary Dismissal rather than amend the complaint to reflect this new fact and that should not be held against him; (2) Plaintiff admits error in not naming in the complaint the unknown officer who allegedly attached a GPS device to his car; (3) Plaintiff avers that he was unable to conduct the investigative functions necessary to defend against the Motion for Summary Judgment due to his incarceration, and thus should have his Motion for Voluntary Dismissal granted; and (4) Plaintiff asserts that there are material facts at issue, noting that Defendant Vargas' affidavit states that he was not involved in the booking process of Plaintiff, while his actual booking sheet shows him as the officer who participated in the booking.

None of the objections put forth by Plaintiff address the deficiencies in his complaint that were identified in the Report and Recommendation as the reason why his complaint must fail as a matter of law. From the evidence presented by Defendants, and the requirements under law to plead §1983 claims under the Eighth, Sixth and Fourth Amendments, Plaintiff has failed to establish in his objections that he would be able to remedy the deficiencies identified by the Magistrate in the R&R.

### a. PLAINTIFF'S CLAIMS AGAINST DEFENDANT BHDPS

The Court agrees with the Magistrate that the Defendant BHPSD is improperly named as a party in this case. Under Michigan law M.C.L.A. §92.1, a municipal police department is part of the municipality; therefore a suit against the BHDPS is actually against the Village of Beverly Hills itself as the real party in interest in this case. *See e.g. Haverstick Enterprises, Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 992, nt. 1 (6th Cir. 1994). Therefore, in this Order, the Court liberally construes the complaint as being filed against the Village of Beverly Hills.

A municipal party may only be sued under §1983 if a Plaintiff is harmed by an execution of a municipal party's unconstitutional policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In his complaint, Plaintiff alleges that during his detention, it was the policy and practice of the BHDPS to house detainees in the City of Birmingham because the BHDPS was not equipped to house detainees for an extended period of time and as a consequence suffered cruel and unusual punishment and violations of his Sixth Amendment rights. [1 at ¶20]. Plaintiff has not proffered any evidence of this policy or practice, and, additionally, this practice itself is not unconstitutional. Moreover, Plaintiff was not in fact housed in the City of Birmingham so it was not the execution of the policy itself that caused his alleged harm. His claims revolve around the inadequacy of the holding cells at BHDPS and the violation of established policy

or practice by individual agents of the BHDPS. Under *Monell*, a municipality cannot be held responsible for an injury inflicted solely by its employees or agents. *Id*. Therefore, based on the facts presented in the complaint, Plaintiff cannot state a valid claim against the BDHPS or the Village of Beverly Hills for the alleged violations incurred during his detention.

Plaintiff's objections do not address his inability to state a valid claim against a municipal Defendant, and therefore his complaints against BHDPS must be dismissed with prejudice.

### b. CLAIMS AGAINST DEFENDANT VARGAS

"The basic requirements of a § 1983 claim include a showing that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). There is no dispute that Vargas was a person acting under color of state law, so the question before the Court is whether Plaintiff was deprived of a constitutional right.

Plaintiff's complaint alleges that Vargas violated his constitutional rights under the Eighth Amendment's prohibition of cruel and unusual punishment allegedly by refusing him food and medication during his detention at BHDPS from November 12, 2013 to November 25, 2013. [1 at ¶¶9-13]. The Eighth Amendment's protections apply specifically to post conviction inmates, while the

due process clause of the Fourteenth Amendment operates in the context of pretrial detainees to provide the same protections as those secured post-conviction under the Eighth Amendment. *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005). In light of the liberal construction given to *pro se* complaints, the Court will construe Plaintiff's Eighth Amendment claims as if Plaintiff had correctly brought them under the Fourteenth Amendment, and will refer to the Eighth Amendment jurisprudence in the following analysis. *Id.*

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). When a Plaintiff brings a condition of confinement claim, he must show that he was deprived of the "minimal civilized measure of life's necessities" and that the Defendant was deliberately indifferent to his health or safety. *Id* at 434. In this case, Plaintiff claims that he was denied food and his medication while detained at BHDPS from the time of his detention on November 23, 2013 to mid-day November 25, 2013. [1 at ¶10]. Specifically, he states that he was not fed until his attorney arrived late in the evening on November 24, 2013. [1 at ¶13]. Plaintiff also alleges that Vargas taunted him with insults focused on his weight when he asked for food. [1 at ¶11; 16].

Defendant presents an affidavit in which Vargas states that the standard procedure at BHDPS is to feed detainees at approximately 7:30am to 8:00am, 11:00am to 12:00pm, and 5:00pm to 6:00pm [29-11 at ¶13]. Vargas further explains that night shift officers work from 7:00pm to 7:00am, and therefore all feeding responsibilities fall to the day shift. [*Id* at ¶14]. Per Vargas' affidavit, as well as the shift sheet from BHDPS submitted into evidence, Vargas worked the night shift from November 22 to November 24, 2013, and thus would not have been responsible for feeding Plaintiff. [29-10]. Defendant Vargas further stated in his affidavit that Plaintiff never requested any food or medicine, but if he had he would have provided it to him. [29-11 at ¶15; 16]. Additionally, Defendant submitted a video of an interview of Plaintiff conducted by BHDPS officers on November 29, 2013 [29-9]. In this interview, Plaintiff explained that he received a granola bar every eight hours during his November 23, 2013 to November 25, 2013 detention. [29-9]. Plaintiff also stated that his attorney brought him his bipolar medication at the BHDPS at 5:00pm on the second day of his detention [*Id*].

As the Magistrate has pointed out, the affidavit evidence at bar, as well as the video evidence of Plaintiff himself, directly contradict his claims. Thus, per Plaintiff's own statements, he was given food and his medicine during his detention from November 23, 2013 to November 25, 2013. Additionally,

Plaintiff's remaining allegations that Vargas called him fat do not rise to the level of an Eighth Amendment claim. None of the objections raised by Plaintiff address these factual inconsistencies. Most notably, Plaintiff does not address the videotaped statements he made five days after his alleged deprivation of food and medicine. His objections do not establish that any evidence he could possibly obtain if the case was dismissed without prejudice could rebut his own previous statements that directly contradict his claims; nor does he demonstrate that a genuine issue of fact exists for trial with respect to this claim.

In addition, the alleged factual disputes that Plaintiff has sought to raise in his objections are not material. Even if Vargas' statement of not being involved in Plaintiff's booking is inaccurate, it does nothing to refute Plaintiff's own statements, and has no bearing on the fact that Vargas was working shifts in which feeding did not occur. Therefore any dispute over that fact is not material with respect to Plaintiff's conditions of confinement claims. The Court agrees with the Magistrate that summary judgment should be granted on Plaintiff's claim that Defendant Vargas violated his Eighth Amendment rights by depriving him of food and medicine.

Moving to Plaintiff's claims surrounding Vargas' alleged actions of November 29, 2013 to November 30, 2013, Defendant Vargas' affidavit asserts that he was not working on those days, and the shift schedule from BHDPS shows

that he was on leave during that period. [29-11 at ¶7; 29-10]. Plaintiff's objections fatally fail to address it. Moreover, he has failed to state that any evidence could be obtained to address this. Therefore, Plaintiff's claims against Vargas arising from the dates of November 29, 2013 to November 30, 2013 are dismissed with prejudice.

Plaintiff also alleges that Vargas hung up on his attorney on November 25, 2013, made Defendant's attorney speak with him through the cell door slot and videotaped this conversation, and threw FOIA paperwork in his attorney's face when she picked up the papers in August 2014. [1 at ¶14, 18, 21]. The Court agrees with the Magistrate that these allegations cannot rise to the level of a Sixth Amendment violation because the record establishes that Plaintiff did have contact with his attorney during his detention from November 23, 2013 to November 25, 2013 when she visited him on November 24, 2013 [1 at ¶13]. Additionally, according to Plaintiff and confirmed by the Court's record, Plaintiff's attorney represented him at his arraignment on November 30, 2013. [1 at ¶17; 29-8]. There is no evidence on the record, or averred to in Plaintiff's complaint, that he was denied counsel under the Sixth Amendment. As for the allegations concerning Vargas throwing documents in the face of Plaintiff's attorney, this does not rise to the status of a constitutional violation against Plaintiff; at most it represents a state-

law claim of assault against Vargas on behalf of his attorney, a claim which Vargas does not have standing to pursue.

Plaintiff's objections plainly fail to address any of the inadequacies flagged by the Magistrate in the R&R. Indeed, the only mention in the objections to his attorney is that he misidentified Vargas, and the officer was in fact Lieutenant Ottney [38]. This has no bearing on the R&R to dismiss this claim against Vargas, and, in light of the record, fails to plead a constitutional violation of his Sixth Amendment.

In conclusion, Plaintiff has failed to show that Defendant Vargas violated his constitutional rights under the Fourteenth Amendment or the Sixth Amendment. Therefore his §1983 claims against Vargas must fail as a matter of law, and summary judgment is appropriate. *Marvin v. City of Taylor*, 509 F. 3d 234, 244 (6th Cir. 2007).

### c. PLAINTIFF'S ADDITIONAL ALLEGATIONS

Plaintiff has also raised other allegations in his complaint, which include the following: (1) in February 2014 Plaintiff arrived at BHDPS with an envelope that contained privileged information which was taken from him and not returned [1 at ¶19]; (2) Plaintiff's attorney contacted the BHDPS in August 2014 to arrange to pick up FOIA-requested paperwork, but was hung up on [1 at ¶21]; (3) while detained in a BHDPS holding cell, Plaintiff was left alone when the officers went

on a fire run, as he allegedly later discovered from FOIA paperwork [1 at ¶22]; and (4) in July 2014, Plaintiff became aware of a GPS tracking device attached on one of his work vehicles and, through private detective work, discovered that it appeared to be activated at the BHDPS despite the absence of any warrant authorizing the search, in violation of his Fourth Amendment rights [1 at ¶23].

In the context of these allegations, Defendant Vargas is not identified as being involved, and in fact Plaintiff does not allege any particular person as committing these alleged violations or any specific dates. Specifically, Defendant Vargas denied any knowledge or involvement in any of these alleged acts in his affidavit [29-11]. The only allegation that might rise to the level of a constitutional violation is the claim which concerns the GPS. Plaintiff has not specified which of the named Defendants committed the alleged violations in either the complaint or in the objections, and there is no inference that can be made by the Court as to which, if either, of the named Defendants committed this act. Defendant Vargas has submitted an affidavit stating that he: did not place a tracking device on Plaintiff's car; did not instruct anyone to place a tracking device on his car; and did not have any knowledge that a tracking device had been placed on his car. [29-11 at ¶27-28]. Further, despite reference to a private investigator that Plaintiff himself hired as the source of the tracking device information, Plaintiff has not submitted any evidence to support this claim, such as a report or affidavit from the private

investigator. Moreover, Plaintiff has provided no reason for lack of evidence, despite discovery being fully completed in this case. He also fails to mention in his objections that evidence from this private investigator will be forthcoming to show either named Defendant committed the alleged violation. Therefore, summary judgment is granted on these claims.

### d. Conclusion

Despite the case advancing all the way through summary judgment and an extension of time to response to the Motion for Summary Judgment, Plaintiff has not responded to the Motion for Summary Judgment, and has filed mere bare bones objections that do not address any of the legal and factual deficiencies that underpin his claims against both Defendants. In conclusion, the Court adopts the Magistrate's R&R. Defendants' Motion for Summary Judgment is granted and, for the reasons stated above, the entirety of Plaintiff's claims against Defendant BHDPS and Defendant Vargas are dismissed with prejudice. Additionally, Defendants' request for attorney fees and costs is denied.

### 3. Motion for Voluntary Dismissal [35]

Plaintiff filed this instant case on May 4, 2015. On August 1, 2016 Defendants filed a Motion for Summary Judgment [29]. Plaintiff requested and obtained an extension to file his response to the Motion on November 1, 2016. Plaintiff filed a Motion for Voluntary Dismissal [35] on October 31, 2016 [35].

Defendants filed a response on November 9, 2016, to which Plaintiff did not reply. On January 20, 2017, the Magistrate recommended that this Motion be denied and further recommended granting in part Defendants' Motion for Summary Judgement in which all of Plaintiff's claims against Defendants were dismissed with prejudice. Plaintiff filed objections on February 17, 2017.

In his Motion for Voluntary Dismissal and objections to the R&R, Plaintiff requests that the Court grant his Motion for Voluntary Dismissal because the limited resources and available contacts that necessarily result from his incarceration necessitate voluntarily dismissal without prejudice so that he can pursue his claims when he is in a better position to do so. Specifically, Plaintiff alleges that he is unable to procure affidavits from his attorneys and other witnesses, and thus is not in a position to respond to the Motion for Summary Judgment. [35; 38]. Defendants opposed this motion, stating that granting Plaintiff's Motion would be unfair since the case had proceeded through discovery to the dispositive motion phase, and significant expense and effort had been untaken in the defense of the case up to date. [36].

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). This decision is within the discretion of the court, and the question to be considered is whether defendant would suffer

"plain legal prejudice" if the case is dismissed without prejudice. *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). When considering a Motion for Voluntary Dismissal, the Court "should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.*

    In this case, the Court agrees with the Magistrate that the factors clearly favor the Defendant. The case was filed on May 4, 2015 and, on August 14, 2015 a scheduling order was entered by the Court setting the discovery cutoff deadline for July 1, 2016 [1; 15]. Prior to this Motion being filed, Plaintiff was actively engaged in discovery up to the discovery cut off deadline, and had more than a year to complete discovery. The fact that Plaintiff was actively engaged in discovery with Defendants, and filed Motions with the Court in response to discovery efforts, undercuts the argument that Plaintiff was thwarted from completion of discovery because of limited resources. Most importantly, Defendants have filed a Motion for Summary Judgment that has merit and which, based on the available evidence and legal authority cited, should be granted. Plaintiff's objections, discussed above on pages five and six, do not demonstrate sufficient need to warrant dismissal without prejudice, as they fail to indicate how additional discovery time and retrievable

affidavits from witnesses could adequately respond to the Magistrate's findings in law and fact pertaining to the claims against the named Defendants. Accordingly, the Court adopts the R&R as to Plaintiff's Motion for Voluntary Dismissal [35] and Plaintiff's Motion is denied.

**IT IS ORDERED** that the Court **ADOPTS** the Report and Recommendation [37].

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [29] is **GRANTED in part** as to the dismissal of the case with prejudice, and **DENIED in part** as to Defendant's request for attorney fees and costs that they incurred defending this action**.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Voluntary Dismissal [35] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Ex Parte Motion to File Exhibit in Traditional Manner [39] is **DENIED as moot**.

**SO ORDERED**.

Dated: March 6, 2017

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge